UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

STACEY L. FRIEDRICH,

Debtor.

Case No. 19-13843-13

---

## MEMORANDUM DECISION

The question presented is whether Stacey L. Friedrich ("Debtor") is eligible for relief under a Chapter 13 bankruptcy. He filed a Chapter 13 petition on November 15, 2019. Less than two weeks later, State Bank of Cross Plains (the "Bank") moved to dismiss the bankruptcy case (the "Motion").

The Bank seeks dismissal pursuant to 11 U.S.C. § 1307(c) for lack of good faith in filing the petition, and because the Debtor's noncontingent, liquidated unsecured claims exceed the statutory amount of $419,275 set forth in 11 U.S.C. § 109(e). Debtor opposes the Motion.

### BACKGROUND

The facts are largely undisputed. Debtor is the sole member and owner of Total Body Laser Center, LLC (the "LLC"), a Wisconsin limited liability company. The LLC is indebted to the Bank by virtue of three commercial loans (collectively, the "Notes") signed in 2018. The Notes are secured by all the LLC's assets. The Debtor personally guaranteed the LLC's repayment through a Commercial Guaranty. He did not pledge any collateral to secure the Notes. He is not a maker on the Notes. As of October 15, 2019, the total balance due on the Notes was $620,121.97.

The LLC failed to make timely payments and defaulted under the Notes. In October 2019, the Bank filed a lawsuit against the LLC and the Debtor in Dane County Circuit Court seeking, among other things, the appointment of a receiver under Chapter 128 of the Wisconsin Statutes.[1] A receivership hearing was scheduled for November 15, 2019.

On the day of the hearing, Debtor dissolved the LLC and executed an Assignment of All Assets and Debts of the LLC to the Members Pursuant to the Corporate Dissolution (the "Assignment"). The Debtor states the reason for the dissolution and transfer was "to stay any further action by the bank's attempts to replevin the business assets." The receivership hearing went on as scheduled and the Dane County Circuit Court entered an Order appointing a receiver. Debtor also filed his personal Chapter 13 petition on the same day.

The Bank asserts it did not consent to the transfer of its collateral from the LLC to the Debtor. The Bank argues the LLC's assets are not part of the Debtor's bankruptcy estate as the Assignment is void and ineffective under Wisconsin law. The Bank also argues that even if the Assignment was successful, the LLC's assets do not qualify as part of the Debtor's secured debt in his Chapter 13 case. In other words, the Assignment did not change the Debtor's obligation to the Bank—flowing from the personal guaranty on the Notes—from an unsecured to a secured debt. As a result, the Bank believes its unsecured claim against the Debtor stands at $620,121.97. Debtor counters that the Bank's $620,121.97 claim is secured against the Debtor by virtue of

---

[1] Case No. 19-CV-2957.

the transfer of all the LLC's assets and liabilities to himself personally. Debtor believes the Bank has an *in rem* claim that can be administered within the Debtor's Chapter 13 Plan.

This decision does not address the Bank's argument for dismissal under 11 U.S.C. § 1307(c) for lack of good faith in filing the petition. The parties were ordered to file briefs on the eligibility argument raised under section 109(e). While the described chain of events relating to the LLC's dissolution and the transfer of its assets appears troublesome, the Court limits its findings to the Debtor's eligibility to continue with his Chapter 13 bankruptcy.

## DISCUSSION

### A. 11 U.S.C. § 109(e) Is Not Jurisdictional

The courts are split on whether the question of eligibility under section 109(e) is jurisdictional or merely an eligibility requirement for those seeking Chapter 13 relief. "The vast majority of courts . . . have found that the eligibility requirements of section 109(e) are not jurisdictional." *In re Olivares*, 2017 Bankr. LEXIS 1846, at *7, 2017 WL 3638198 (Bankr. S.D. Fla., Feb. 8, 2017). *See also In re Jones*, 134 B.R. 274, 280 (N.D. Ill. 1991) ("An examination of the Code's language and structure reveals that Congress had no intention of establishing section 109(e) as a jurisdictional statute.").

In *In re Fishel*, this Court examined the split and sided with the majority view that eligibility under 11 U.S.C. § 109(e) is not jurisdictional. 583 B.R. 474, 476 (Bankr. W.D. Wis. 2018). The Court agreed with a Sixth Circuit Court of Appeals decision finding that "the eligibility requirements of § 109(e) create a

3

gateway into the bankruptcy process, not an ongoing limitation on the jurisdiction of the bankruptcy courts." *Glance v. Carroll (In re Glance)*, 487 F.3d 317, 321 (6th Cir. 2007). This simply means that the Court has jurisdiction to hear and consider matters arising in this case. It is not, however, the end of the inquiry about eligibility as the Debtor suggests.

B. <u>Dismissal Under 11 U.S.C. § 1307(c)</u>

The overarching goal of the Bankruptcy Code is to grant honest but unfortunate debtors a fresh start. Chapter 13 is one tool that enables such debtors to obtain relief under the Code. That said, Chapter 13 bankruptcies are reserved for relatively small debtors who wish to retain their property while making scheduled payments to creditors. The Code provides the following eligibility criteria:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $419,275 . . . may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e).

Section 1307(c) provides for the conversion or dismissal of a Chapter 13 case "for cause." The Code does not define "cause," but 11 U.S.C. § 1307(c)(1)-(11) provides a list of circumstances that constitute "cause" for dismissal or conversion. The Seventh Circuit has ruled that the enumerated list in section 1307(c) is non-exhaustive. *See In re Love*, 957 F.2d 1350 (7th Cir. 1992); *In re Smith*, 848 F.2d 813, 816 n.3 (7th Cir. 1988). Bankruptcy courts in this Circuit have found a debtor's ineligibility under section 109(e) to constitute cause for dismissal. *See, e.g., In re Bailey-Pfeiffer,* 2018 Bankr. LEXIS 2076, 2018 WL

1896307 (Bankr. W.D. Wis. Mar. 23, 2018); *In re McGovern,* 122 B.R. 712, 717 (Bankr. N.D. Ind. 1990); *In re Dobkin,* 12 B.R. 934 (Bankr. N.D. Ill. 1981).

The Seventh Circuit has yet to explicitly acknowledge that ineligibility under section 109(e) constitutes "cause" under section 1307. But by affirming lower courts' dismissals of cases based on ineligibility under section 109(e), the Court of Appeals has implicitly confirmed that ineligibility is indeed a ground for dismissal. *See, e.g.*, *In re Sidebottom,* 430 F.3d 893 (7th Cir. 2005); *In re Knight,* 55 F.3d 231 (7th Cir. 1995); *In re Day,* 747 F.2d 405 (7th Cir. 1984).

Section 1307(c) provides that "the court *may* convert . . . or *may* dismiss a case under this chapter, whichever is in the *best interests of creditors and the estate,* for cause[.]" 11 U.S.C. § 1307(c) (emphasis added). "The decision to convert or to dismiss a Chapter 13 case is a matter of discretion for the bankruptcy court." *Fishel,* 583 B.R. at 478 (citing *In re Handy,* 557 B.R. 625, 628 (Bankr. N.D. Ill. 2016)).

### 1. The Debtor's Bankruptcy Estate

The Bank asserts the Assignment is ineffective under state law and the LLC's assets never became part of the Debtor's bankruptcy estate. Section 541(a) of the Code provides that the filing of a petition creates a bankruptcy estate, which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Although the bankruptcy estate is a creation of federal law, its *res* is a creature of state law: whether the debtor has an interest in property . . . and the nature of [such an] interest are questions generally determined by state law." *First Nat'l Bank v.*

*Gruber (In re Gruber),* 2014 Bankr. LEXIS 1686, at *7, 2014 WL 1584204 (Bankr. E.D. Wis. Apr. 16, 2014) (citation omitted; internal quotation marks omitted). The bankruptcy estate "only encompasses the interests in property that a debtor holds as a matter of state law" on the petition date. *Id.* As a result, this Court must look to Wisconsin law under Wis. Stat. Ch. 183 to determine whether the LLC's assets became part of the Debtor's bankruptcy estate.

In Wisconsin, "property of a limited liability company . . . may be transferred by an instrument of transfer executed by any member in the name of the limited liability company." Wis. Stat. § 183.0702(1) (2019-2020).[2] But the authority to transfer that property is not unlimited. Wis. Stat. § 183.0607 provides, in pertinent part:

> A limited liability company *may not* declare or make a distribution to any of its members if, after giving effect to the distribution, . . . (a) The limited liability company *would be unable to pay its debts* as they become due in the usual course of business.

Wis. Stat. § 183.0607(1)(a) (emphasis added). Moreover, Wis. Stat. § 183.0905 "establishes the priority for distributing the assets of an LLC as it winds up its business. Assets . . . must first be distributed to the LLC's creditors, then to the LLC's members, and lastly to former members of the LLC." *Protective Life Ins. Co. v. B&K Enterprizes LLC,* 2010 U.S. Dist. LEXIS 31650, at *12, 2010 WL 1368660 (E.D. Wis. Mar. 31, 2010). Wis. Stat. § 183.0905. Lastly, a limited

---

[2] All references to the Wisconsin Statutes are to the 2019-2020 version unless otherwise noted.

liability company's dissolution does not automatically "[t]ransfer title to the [LLC's] property." Wis. Stat. § 183.0903(3)(a).

Here, it is clear the LLC was unable to pay its debts as they came due. The attempted transfer of all the LLC's assets further impaired its ability to pay its debts to the Bank. The LLC's attempted distribution of its assets occurred in violation of Wis. Stat. § 183.0607(1)(a). It also violated the established priority for distribution of assets under Wis. Stat. § 183.0905. During its wind-up stage, the LLC's assets must have first been distributed to its creditors, such as the Bank, and not to its sole member, the Debtor. Further, the sole purpose of the distribution was to hinder and delay a secured creditor. And thus, the Debtor should not, by definition, have received distribution of assets from the LLC.

Because the Debtor should not have received the LLC's assets in violation of Wis. Stat. Ch. 183, and the LLC's dissolution did not automatically transfer title of its property, the Court could conclude that the Debtor did not own the LLC's assets at the time of his bankruptcy petition. The Court does not need to determine that all attempted asset distributions made in violation of Wis. Stat. Ch. 183 are void under Wisconsin law. The Court is viewing this issue within the narrow context of what assets belong to this Debtor's bankruptcy estate and limits its findings to the unusual facts and circumstances of this case. The Court is deeply troubled by the sequence of events prior to the Debtor's bankruptcy petition. The Debtor sought to keep assets belonging to the LLC to avoid the statutory distribution scheme and to

Document      Page 8 of 15

remove assets from the reach of the LLC's secured creditor. While there may be circumstances in which this is appropriate, the facts here belie the Debtor's motives. The dissolution of the LLC and the attempted transfer of the assets occurring so close in time to the state court hearing, the admission that the transfer was done to impede action by the Bank to replevin LLC assets, and the filing of the bankruptcy petition suggest the sole reason for the dissolution and transfer was to hinder or delay the Bank from realizing on its collateral and to circumvent the procedures and the protections afforded to creditors in Chapter 11 proceedings.

The Debtor argues the attempted transfer is not void. But whether the attempted transfer is void or not does not change the Court's analysis and findings regarding the Debtor's eligibility to remain in a Chapter 13 bankruptcy.

### 2. *The Bank's Secured Creditor Status*

The Bank argues that even if the Assignment was valid, the transferred LLC assets do not qualify as part of a secured debt in the current Chapter 13 case because the Debtor now owns assets subject to the Bank's liens. Mere title to the asset does not create secured debt. Put differently, the Debtor's acquisition of assets did not convert the Bank's position and status as an unsecured creditor in his case to that of a secured creditor.

Wis. Stat. Ch. 409, adopting Article 9 of the Uniform Commercial Code (UCC), governs the procedural steps a party must take to enjoy the benefits afforded to secured creditors and to obtain superior interests to other creditors.

Wis. Stat. § 409.101; Wis. Stat. § 409.109(1)(a); *Nat'l Operating, L.P. v. Mut. Life Ins. Co. of N.Y.*, 2001 WI 87, ¶31, 244 Wis. 2d 839, 630 N.W.2d 116 ("Wisconsin has adopted each section of the U.C.C[.] This includes all of Article 9, which is embodied in Chapter 409 of the Wisconsin Statutes.").

For the purpose of Chapter 409, a debtor is a person having an interest in the collateral. Wis. Stat. § 409.102(1)(gs)1. A secured party is a person "in whose favor a security interest is created or provided for under a security agreement, whether or not any obligation to be secured is outstanding." Wis. Stat. § 409.102(1)(rs)1. A security agreement "is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." Wis. Stat. § 409.201(1).

The Bank secured repayment of the Notes through multiple Commercial Security Agreements, in which the LLC granted the Bank a security interest in all its assets. The Debtor did not sign a security agreement granting a security interest in any assets he owned. At the time a security interest was granted to the Bank, he did not have any interest in the collateral. It belonged to the LLC. Thus, the Bank was not a secured creditor of the Debtor. The security interest between the LLC and the Bank satisfied the requirements for attachment.

> Attachment . . . generally depends on three things: (1) the debtor must sign a security agreement identifying the collateral; (2) the creditor must give the debtor value in exchange for the collateral; and (3) the debtor must have rights in the collateral.

*Attorney's Title Guar. Fund, Inc. v. Town Bank*, 2014 WI 63, ¶28, 355 Wis. 2d 229, 850 N.W.2d 28. *See also Nat'l Exch. Bank v. Mann*, 81 Wis. 2d 352, 358, 260 N.W.2d 716 (1978) ("The requirements that the debtor sign a security

agreement describing the collateral, that the creditor give value[,] and that the debtor have rights in the collateral must all exist to give rise to an enforceable security agreement.").

A party obtains superior interest to other creditors by perfecting its security interest. Wis. Stat. § 409.308(1). The statutory perfection requirements depend on the type of collateral, but generally, "a financing statement must be filed to perfect all security interests[.]" Wis. Stat. § 409.310(1). Perfection requires attachment of the security interest. "A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral[.]" Wis. Stat. § 409.203(1). The Bank took the steps necessary to perfect its security interest in the collateral pledged by the LLC.[3] Thus, the Bank holds a perfected security interest that is properly attached to the LLC's assets—making the Bank a secured creditor of the LLC protected by the provisions of Wis. Stat. § 409.201(1) described above.

The LLC's attempted transfer of the Bank's collateral to the Debtor does not mean the Debtor has pledged assets to the Bank. The Assignment did not change the Debtor's relationship with the Bank. Assuming the Assignment was valid, the Debtor—as the new owner of the LLC's assets—now owns assets subject to the Bank's liens.

> As a general rule, the holder of a perfected security interest has an interest in the secured property which is superior to the interests of

---

[3] ECF No. 15 Exhibit B.

the debtor, unsecured creditors of the debtor and *subsequent purchasers of the secured property.*

*Daniel v. Bank of Hayward,* 144 Wis. 2d 931, 936, 425 N.W.2d 416 (1988) (emphasis added).

Even if the attempted transfer is not void, the Debtor's liability to the Bank remains unchanged. The wrongful transfer, made in violation of Wis. Stat. Ch. 183, would give the Bank additional claims against the LLC and the Debtor. As the sole member of the LLC, the Debtor could be personally liable to the LLC's creditors for the improper winding up of the company. *See New Horizons Supply Coop. v. Haack,* 224 Wis. 2d 644, 590 N.W.2d 282, 1999 Wisc. App. LEXIS 108 (Wis. Ct. App. 1999) (finding that the defendant failed to take appropriate steps under Wis. Stat. Ch. 183 to shield herself from personal liability for an LLC's debts).

However, the imposition of additional claims would not change the Debtor's original obligation to the Bank. Put differently, the additional claims would be independent of, and in addition to, the Debtor's existing obligation to the Bank under his personal guaranty.[4] If the transfer was not void, the Debtor merely owns assets that are the subject of a prior perfected and enforceable security interest. Any independent claims that might exist as a result of an improper transfer are not subject to a security interest because there has been no security agreement between a debtor and a secured party to create such a

---

[4] The Court's record is devoid of any evidence that additional claims have been levied against the Debtor for the LLC's improper distribution of assets during its winding up stage.

11

security interest. Neither does the transfer create a security agreement between the Debtor and the Bank.

As the guarantor of the Notes, the Debtor's liability is still an unsecured obligation to the Bank in the amount of $620,121.97.[5] Debtor's noncontingent, liquidated unsecured claims exceed the statutory amount of $419,275 set forth in 11 U.S.C. § 109(e). Debtor is prohibited from obtaining relief under a Chapter 13 bankruptcy case.

### 3. The Fishel Decision Does Not Support The Debtor's Position.

Debtor asserts the Bank has not been substantially harmed by the filing of his petition and will receive the value of its collateral through a Chapter 13 Plan. Debtor's brief cites this Court's decision in *In re Fishel*, 583 B.R. 474 (Bankr. W.D. Wis. 2018), for the proposition that the Court should overlook the eligibility requirements of section 109(e) and allow him to continue with his Chapter 13 bankruptcy. Debtor believes the current Chapter 13 case is his best shot at a fresh start. The Court understands the Debtor's misfortunes, but his circumstances are clearly distinguishable from the debtor in *Fishel*.

In *Fishel*, this Court denied a trustee's motion to dismiss a Chapter 13 case on the grounds the debtor's liquidated unsecured claims exceeded section

---

[5] That the new owner of the LLC's assets happens to be the guarantor of its Notes does not change the secured and unsecured relationships established between the three parties through the Notes and the Debtor's personal guaranty. In Wisconsin, the law "treats the liability of a guarantor as separate and distinct from the liability of the borrower, arising not from the debt itself but from the terms of the guaranty contract." *Bank Mut. v. S.J. Boyer Constr., Inc.*, 2010 WI 74, ¶54, 326 Wis. 2d 521, 785 N.W.2d 462.

109(e)'s statutory limit. Ms. Fishel was a true consumer debtor whose unsecured debt amount was not clearly established under the presented facts. Ms. Fishel was an above-median debtor with enough disposable income to disqualify her from obtaining relief under a Chapter 7 bankruptcy. Her only other option was to file a Chapter 11 petition which would have likely caused significant portions of funds available for creditors to be paid towards the United States Trustee quarterly fees and the administrative expenses associated with Chapter 11 cases.

The Court found that a literal interpretation of section 109(e) would lead to absurd and unintended results under the specific facts of Ms. Fishel's case and her lack of alternative options.

> [I]t is in the best interests of [Ms. Fishel], the estate, and the creditors that the Debtor be permitted to pursue confirmation of her Chapter 13 Plan. The Court finds section 109 does not exclude [Ms. Fishel] from relief on the set of facts here. To hold otherwise would effectively exclude [her] from relief, and the congressional intent behind limiting the availability of Chapter 13 through section 109(e) is not applicable here. . . . The Court does not seek to determine the preclusive effect of section 109(e) in all cases. Rather, the Court is exercising its discretion under sections 105 and 1307 to review issues arising under section 109 on a fact specific, case-by-case basis. The Court is also disinclined to dismiss [Ms. Fishel's] case where the amount of unsecured debt is not clearly established.

*Fishel,* 583 B.R. at 479.

In *Fishel,* the debts were primarily consumer debts. Here, the debts are primarily business debts resulting from the Debtor's guaranty of the LLC's debts. This is an important fact that distinguishes the Debtor's case from *Fishel*. There was nothing unclear about the amount of the Debtor's obligations when this case was filed. When the LLC defaulted, he chose to engage in last

13

minute maneuvers for the purpose of "stay[ing] any further action by the bank's attempts to replevin the business assets." Those actions do not comport with acts of an honest but unfortunate debtor. Instead, it appears they were calculated solely to remove LLC assets from the reach of the Bank and to delay realization on the Bank's collateral.

Unlike the debtor in *Fishel*, the Debtor's options in this case are not as limited. In fact, the Debtor's brief concedes he might be able to avail himself of some of the alternative options unavailable to the debtor in *Fishel*.[6] Even so, Debtor argues that an alternative Chapter 11 filing would likely fail under the cumbersome requirements associated with Chapter 11 cases. Debtor provides no reasoning or proof to support this assertion. He ignores the streamlined procedures available to him or to the LLC under Subchapter V of Chapter 11. No evidence has been presented to explain why the Debtor or the LLC would not succeed in a hypothetical Chapter 11 case. And the Debtor is not a "true consumer debtor" as his debts are primarily business debts.[7] Lastly, unlike the debtor in *Fishel*, the amount of this Debtor's unsecured debts are clearly established and exceed the limits under section 109(e).

The Court makes no findings on the Bank's Motion to dismiss for cause for lack of good faith in filing. This decision is merely a finding that the Debtor's $620,121.97 noncontingent, liquidated unsecured debt to the Bank exceeds the statutory amount of $419,275 set forth in 11 U.S.C. § 109(e). The

---

[6] ECF No. 55 at 4.

[7] Official Form 101: Part 6.

14

Bankruptcy Code prohibits this Debtor from obtaining relief under a Chapter 13 case.

## CONCLUSION

For these reasons, the Bank's Motion to Dismiss the Bankruptcy Case is granted. This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: May 5, 2020

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge